(101 App. Div. 150)

### GILFEATHER v. GROUT, City Comptroller.

(Supreme Court, Appellate Division, Second Department. January 6, 1905.)

1. MUNICIPAL ASSESSMENTS—PAYMENT—STATUTES—CONSTRUCTION.

Laws 1899, p. 1074, c. 522, authorized the cancellation of certain assessments on payment of one-third thereof; section 1 providing that such payment might be made within 90 days from passage of the act, with interest at 6 per cent. from the date of its passage, and section 2 declaring that any person not complying with the previous section should have no right to make payments except on payment of 1 per cent. per month interest on the sum directed to be paid by the act from the time of its passage, and that all right to make such payments should cease at the end of the calendar year and three days additional. *Held*, that under such provisions the property owner was entitled to three months in which to make payment of one-third of the original assessment on payment of 6 per cent. interest from the date of the passage of the act, and, if he failed to do so, he was to pay interest at 1 per cent. a month for the balance of the time fixed.

2. SAME.

Where it is necessary to resort to construction of a statute passed to relieve property owners from a municipal assessment for a street improvement it should be construed in favor of such property owner rather than against him.

3. SAME—INTEREST.

Where a property owner is indebted to a municipal corporation for a street assessment, and the amount thereof is known, interest follows the same in the same manner as it accrues on other debts.

4. SAME.

Laws 1899, pp. 1074, 1075, c. 522, §§ 1, 2, authorized the cancellation of certain municipal assessments on payment of one-third of the original as-

¶ 3. See Municipal Corporations, vol. 36, Cent. Dig. §§ 1103, 1218.

sessment, with interest at 6 per cent. per annum if paid within 90 days from the passage of the act, and, if not, the property owner was entitled to pay such amount, with interest at 1 per cent. per annum, for the balance of the calendar year and three days additional, after which his rights under the act were barred. By Laws 1903, p. 910, c. 398, section 2 of the former act was amended so as to read that any person interested who should not avail himself of the privilege of the foregoing section on or before June 1, 1903, should have no right to make payment except on payment of 1 per cent. interest per month on the sum directed to be paid by the act from the date of its passage, etc. *Held*, that the act as amended should be construed to authorize payment of one-third the original assessment, with interest at 6 per cent. from the date of the passage of the original act, provided payment was made before June 1, 1903.

5. SAME—ASSESSMENTS—PAYMENT—ESTOPPEL.
        Where petitioner's predecessor in title paid one-third of an original street assessment, persons claiming under him were thereby estopped to deny the validity of the obligation.

Appeal from Special Term, Kings County.

Application by Jane Gilfeather for writ of mandamus against Edward M. Grout, as Comptroller of the City of New York, to compel the cancellation of an assessment lien on certain real estate. From an order granting the writ the comptroller appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

James D. Bell (P. E. Callahan, on the brief), for appellant.
James A. Sheehan, for the petitioner.

WOODWARD, J. The petitioner is the owner of certain premises situated at Coney Island, known on the assessment map of the grading of Surf avenue as "Assessment No. 35." In a proceeding instituted in 1891 for the grading of Surf avenue the property of the petitioner was assessed for the sum of $2,843.10. This assessment remained unpaid, and in 1899 the Legislature of this state enacted chapter 522, p. 1074, of the Laws of that year, which provided that upon the payment of one-third of the original assessment the various officials having a record of such assessment upon the books and documents in their offices should cancel the same. Section 1, which contained this provision, concluded with the following clause:

"The payment hereinbefore provided for may be made within ninety days after the passage of this act with interest at the rate of six per centum per annum, from the day of its passage."

Section 2 provided:

"Any person interested who shall not avail himself of the privilege afforded by the foregoing section, shall have no right to make payments except on the following terms: He shall pay one per centum interest for each calendar month upon the sum directed to be paid by this act from the time of the passage thereof, and all rights to make such payments are extended only to and shall cease at the end of the present calendar year with three days added thereto, after which time the installments of assessment shall be collected as now otherwise provided by law and the same shall be in all things confirmed."

It seems entirely clear to us that under the provisions of this act the property owner was to have three months in which to make the

payment of one-third upon the original assessment upon the payment of 6 per cent. interest from the date of the passage of the act. If he failed to act within three months, he was penalized to the extent of 6 per cent. per annum; that is, if he ran over 90 days he was to pay interest at 1 per cent. per month, or 12 per cent. per annum, instead of 6 per cent. per annum, and the time within which payment could be made at all under the reduced assessment was limited to 3 days beyond the then current calendar year, at the end of which time the original assessment was to be reinstated and confirmed. The petitioner, or her predecessor in title, made no payment under the provisions of chapter, 522, p. 1074, of the Laws of 1899, but in the year 1903 the Legislature enacted chapter 398, p. 910, of the Laws of that year, in which section 2 of chapter 522 of the Laws of 1899 was amended so as to read as follows:

"Any person interested who shall not avail himself of the privilege offered by the foregoing section, on or before June first, nineteen hundred and three, shall have no right to make payments except for the following terms: He shall pay one per centum interest for each calendar month upon the sum directed to be paid by this act from the time of the passage thereof, and all rights to make such payments are extended only to and shall cease at the end of the present calendar year with three days added thereto, after which time the installments of assessments shall be collected," etc.

Under the settled rule of statutory construction that an original statute, with all its amendments, must be read together, and viewed as one act, passed at the same time (Lyon v. M. R. Co., 142 N. Y. 298, 303, 37 N. E. 113, 25 L. R. A. 402, and authority there cited), chapter 522, p. 1074, of the Laws of 1899, is to be read, for the purposes of this controversy, as though it contained section 2 as amended by chapter 398, p. 910, of the Laws of 1903, and, as thus viewed, there are irreconcilable inconsistencies in the act. Where there is any necessity to resort to construction at all, it must be in favor of the property owner, rather than against him (Nehasane Park Assn. v. Lloyd, 167 N. Y. 431, 436, 60 N. E. 741, and authorities there cited), and as section 2 of the act, as amended, gives the property owner the right to pay one-third of the original assessment, and to be discharged from the remainder at any time prior to June 1, 1903, the provision of the original act that the same might be paid within "ninety days after the passage of this act, with interest at the rate of six per centum per annum from the day of its passage," must be deemed to have been repealed in so far as it fixed a limitation of 90 days from the date of the original enactment for taking advantage of its provisions upon the payment of 6 per cent. interest; but we can see no reason for believing that the Legislature intended to relieve the property owner from the payment of interest upon an ascertained amount of the assessment. It is generally recognized as the law of the land that, where one is indebted to another, and this amount is known, interest upon the amount unpaid follows as a matter of course, and we can see no difference in principle because the amount is owed to a municipal corporation for a public improvement instead of to an individual or private corporation. We are of the opinion, therefore, that the act should be construed to read that "the payment hereinbefore pro-

vided for may be made on or before June first, nineteen hundred and three, with interest at the rate of six per centum per annum from the day that the amount became fixed by the passage of the original act." This gives to the petitioner all of the rights which were accorded to others by the provisions of the original act in 1899, and, as she has had the use of the money which belonged to the city of New York from the date of the original act, she is in justice bound to pay for the use of the same. If we are right in this conclusion, it follows that the petitioner, or her predecessor in title, could not discharge the obligation owed to the city of New York by the payment of one-third of the amount of the original assessment, without interest, and that the peremptory writ of mandamus could not properly issue to compel the cancellation of the apparent lien upon the premises. The petitioner's predecessor in title, by paying one-third of the original assessment, has estopped those claiming under him to deny the validity of the obligation, and, as the amount became fixed under the provisions of chapter 522, p. 1074, of the Laws of 1899, there was a debt owing to the city of New York from the 5th day of May, 1899, to the time of the payment in May, 1903, and the statute did not authorize the comptroller to receive less than the debt, with interest.

If the petitioner's predecessor in title had not paid the assessment until after the 1st day of June, 1903, he would have been permitted to pay the same upon the condition that he should "pay one per centum interest for each calendar month upon the sum directed to be paid by this act from the time of the passage thereof," which could refer to no other time than the date of the passage of the original act which fixed the amount to be paid. It would be absurd to say that the Legislature intended to extend the interest of 1 per cent. per month back to the time of the passage of the original act in case of default, and to entirely relieve the property owner from the payment of simple interest over the same term where he complied with the provisions of the act and paid before the 1st day of June. Reading the whole act together for the purpose of learning the legislative intent, we can reach no other conclusion than that the order appealed from should be reversed.

The order appealed from should be reversed, with $10 costs and disbursements. All concur.